207 S.W.3d 877 (2006)
In the Interest of S.B. and Y.B., Minor Children.
No. 2-06-091-CV.
Court of Appeals of Texas, Fort Worth.
November 2, 2006.
*880 Terry John Barlow, Fort Worth, for Appellant.
Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Kimberly Wesley, Melissa Paschall, Asst. Crim. Dist. Atty's, Fort Worth, for State.
PANEL F: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

OPINION
TERRIE LIVINGSTON, Justice.

I. Introduction
Appellant Renard B., the biological father of S.B. and Y.B., timely filed a notice *881 of appeal contesting the trial court's order terminating his parental rights. In three points, appellant contends (1) that his trial counsel was ineffective, (2) that the trial court erred by admitting hearsay statements from and a videotape interview of S.B. and Y.B., and (3) that the evidence was legally and factually insufficient to support the trial court's section 161.001(1)(D) and (E) endangerment findings and best interest findings. Appellant properly presented for our review only his hearsay challenge to the children's counselor's statements, his legal and factual sufficiency challenges to the trial court's endangerment findings, and his factual sufficiency challenge to the trial court's best interest finding. Because we hold that the trial court properly admitted the counselor's testimony, the evidence was both legally and factually sufficient to support the trial court's endangerment findings, and the evidence was factually sufficient to support the trial court's best interest finding, we affirm.

II. Factual Background
The Texas Department of Protective and Regulatory Services filed a petition to terminate the parent-child relationship between appellant and his two children, S.B. and Y.B. At the time of the termination proceeding, appellant was awaiting trial for murdering Serena Martinez, S.B. and Y.B.'s mother, and for stabbing Raul "Ricky" Hernandez.
Prior to the termination proceedings and Serena's death, appellant and Serena were in a romantic relationship. While the couple lived together, they often engaged in arguments, neither Y.B. nor S.B. attended school regularly, and the power and water utilities in their home were disconnected at least once.
After appellant moved out, he left the children with Serena, who was allegedly a prostitute and crack cocaine user. Appellant, who is now incarcerated, frequently used marijuana and crack cocaine until his arrest for Serena's murder, even when caring for the children.
Additionally, prior to the termination trial but while appellant was incarcerated, appellant refused to correspond with S.B. or Y.B., did not complete any tasks on his Child Protective Services ("CPS") Plan, and did not attempt to contact CPS about the children.

III. Statement of Points
As a preliminary matter, we address the State's contention that Appellant's points on appeal do not appear in his statement of points or motion for new trial. Section 263.405(i) of the Texas Family Code provides,
The appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of the points on which the party intends to appeal or in a statement combined with a motion for new trial. For purposes of this subsection, a claim that a judicial decision is contrary to the evidence or that the evidence is factually or legally insufficient is not sufficiently specific to preserve an issue for appeal.[1]
We agree with the State that appellant did not properly present his first pointthat *882 trial counsel was ineffectivein his motion for new trial or his statement of points. Accordingly, we dismiss appellant's first point. See TEX. FAM.CODE ANN. § 263.405(i); In re D.A.R., 201 S.W.3d at 230.
Appellant's second and third points, however, are closer calls. The relevant portions of appellant's statement of points allege,
(2) The Court repeatedly admitted into evidence the children's counselor's hearsay testimony over Appellant's objections throughout the trial.
(3) The Court's ruling under Section 161.001(D) and (E) was not corroborated nor supported by any evidence other than that of the hearsay testimony of the children's counselor.
(4) The best interests of the child were not served because the Appellant has yet to be convicted of any criminal offense.[2]
We believe that appellant's statement of points raises a hearsay complaint as to the children's counselor's testimony. Accordingly, we will address that argument. However, neither appellant's statement of points nor his motion for new trial asserts that the trial court improperly admitted the videotape of the children's testimony into evidence. Therefore, we dismiss that portion of appellant's second point.
We also do not believe that appellant's statement of points raises the issue of legal insufficiency on the best-interest finding that he includes in his third point. Accordingly, we dismiss that portion of appellant's third point. We do, however, believe that appellant's statement of points presents both legal and factual insufficiency arguments on the section 161.001(1)(D) and (E) endangerment findings and a factual sufficiency argument on the best-interest finding. His statement of points was certainly specific enough to allow the trial judge to correct any erroneous findings on those grounds.[3] Further, given that termination statutes are to be construed strictly in favor of the parent, we are prohibited from construing the statute in a way that liberally expands its reach and consequently favors the State. Holick v. Smith, 685 S.W.2d 18, 20 (Tex.1985); In re E.S.S., 131 S.W.3d 632, 636 (Tex.App.-Fort Worth 2004, no pet.). We therefore address appellant's legal and factual sufficiency arguments on his endangerment findings and appellant's factual sufficiency argument on the best interest finding.

IV. The Children's Counselor's Testimony
In his second point, appellant asserts that Dee Dee Thompson's testimony regarding S.B.'s and Y.B.'s statements was inadmissible hearsay because the trial court admitted the statements without complying with the procedural requisites of section 104.006. See TEX. FAM.CODE ANN. § 104.006 (Vernon 2002). Specifically, appellant complains that the trial court failed "to ascertain whether the children *883 were available to testify in any manner as required by Family Code [section] 104.006(1)" and whether the counselor's "testimony was necessary to protect the children's welfare as required by Family Code [section] 104.006(2)."
Section 104.006 does not require the trial court to make a finding that the witness's statement in lieu of the child's testimony is necessary to protect the child's welfare if the child does not testify. See In re K.L., 91 S.W.3d 1, 16 (Tex.App.-Fort Worth 2002, no pet.). Rather, the statute permits the trial court to admit the statement if it finds that the statement is reliable and (1) the child testifies or is available to testify at the proceeding in court or in any other manner provided for by law or (2) the court determines that the use of the statement in lieu of the child's testimony is necessary to protect the welfare of the child. See TEX. FAM.CODE ANN. § 104.006; In re K.L., 91 S.W.3d at 16. Thus, only if a child is unavailable to testify is the trial court required to make a finding that admitting the witness's statement in lieu of the child's testimony is necessary to protect the child's welfare. See In re K.L., 91 S.W.3d at 16.
The record shows that the trial court heard and considered arguments from both parties regarding the admissibility of Thompson's statements under section 104.006. Neither party indicated that S.B. was unavailable to testify. Because the trial court could have concluded that S.B. was available to testify, the trial court was not required to make a finding that Thompson's testimony in lieu of S.B.'s testimony was necessary to protect S.B.'s welfare. Rather, the trial court was required to determine only the reliability of S.B.'s statements. See id. at 16-17. Here, the trial court heard arguments from both sides on Thompson's interactions with the children and her counseling methods and determined that the statements S.B. made to her were reliable.[4]
Although appellant also claims that Thompson's testimony in lieu of Y.B.'s testimony was improperly admitted, appellant did not raise this objection at trial. Therefore, he did not preserve this point for our review. See TEX.R.APP. P. 33.1(a)(1).
Even if the trial court had erroneously admitted Thompson's testimony into evidence, these statements only support other properly admitted testimony that the children were home when appellant stabbed Serena and Ricky. Thus, the evidence is cumulative of other evidence admitted without objection. See Richardson v. Green, 677 S.W.2d 497, 501 (Tex.1984) (holding that error in the admission of evidence is harmless if the objecting party permits the admission of the same or similar evidence without objection). Accordingly, we overrule this part of appellant's second point.

V. Endangerment and Best Interest of the Children

A. Endangerment Findings
In his third point, appellant first argues that the evidence is legally and factually insufficient to support the trial court's findings that appellant (1) engaged in conduct which endangered the children's physical or emotional well-being and (2) knowingly placed or knowingly allowed the children to remain in conditions which endangered their physical or emotional well-being.
*884 A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." In re C.H., 89 S.W.3d 17, 26 (Tex. 2002). In a termination case, the State seeks not just to limit parental rights but to end them permanentlyto divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. TEX. FAM.CODE ANN. § 161.206(b) (Vernon Supp.2006); Holick, 685 S.W.2d at 20. We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. Holick, 685 S.W.2d at 20-21; In re D.T., 34 S.W.3d 625, 630 (Tex.App.-Fort Worth 2000, pet. denied) (op. on reh'g).
In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child under subdivision (2). TEX. FAM.CODE ANN. § 161.001(1), (2) (Vernon Supp.2006); Richardson, 677 S.W.2d at 499; Swate v. Swate, 72 S.W.3d 763, 766 (Tex.App.-Waco 2002, pet. denied). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.1987).
Termination of parental rights is a drastic remedy and is of such weight and gravity that due process also requires the petitioner to justify termination by clear and convincing evidence. TEX. FAM.CODE ANN. §§ 161.001, 161.206(a); In re G.M., 596 S.W.2d 846, 847 (Tex.1980). This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. G.M., 596 S.W.2d at 847; D.T., 34 S.W.3d at 630. It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM.CODE ANN. § 101.007 (Vernon 2002).

1. Legal Sufficiency Standard of Review
The higher burden of proof in termination cases alters the appellate standard of legal sufficiency review. In re J.F.C., 96 S.W.3d 256, 265 (Tex.2002). The traditional no-evidence standard does not adequately protect the parent's constitutional interests. Id. In reviewing the evidence for legal sufficiency in parental termination cases, we must determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction" that the grounds for termination were proven. Id. at 265-66. We must review all the evidence in the light most favorable to the finding and judgment. Id. at 266. This means that we must assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so. Id. We must also disregard all evidence that a reasonable factfinder could have *885 disbelieved. Id. We must consider, however, undisputed evidence even if it does not support the finding. Id. If we determine that no reasonable factfinder could form a firm belief or conviction that the grounds for termination were proven, then the evidence is legally insufficient, and we must render judgment for the parent. Id.

2. Factual Sufficiency Standard of Review
The higher burden of proof in termination cases also alters the appellate standard of factual sufficiency review. C.H., 89 S.W.3d at 25. "[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance." Id. In considering whether the evidence of termination rises to the level of being clear and convincing, we must determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction" that the grounds for termination were proven. Id. Our inquiry here is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated one of the conduct provisions of section 161.001(1) and that the termination of the parent's parental rights would be in the best interest of the child. Id. at 28.

3. Analysis
Here, there is evidence that appellant murdered Serena while the children were present. Officer Matthew Hardy testified that appellant had admitted to stabbing both Serena and Ricky at Serena's home and then attempting suicide at his own residence. Appellant also admitted that although four-year-old Y.B. and five-year-old S.B. were not in the same room of the stabbing, they were at Serena's house when it occurred.
Additionally, S.B. stated that he saw appellant cut Ricky, saw appellant jump on Serena, and saw Serena's bloody body after appellant had stabbed her. For months after that, S.B. would only talk about Serena's death. Y.B. stated that she was in the living room when appellant called Serena a "bitch," slapped her, and then pulled out a knife and stabbed her. Y.B. also saw Serena's bloody body after the stabbing. Evidence at trial also showed that appellant had used crack cocaine and marijuana, had cared for the children while using drugs, and had abused Serena on more than one occasion.
Appellant argues that the testimony against him on the 161.001(1)(E) claim was full of "hearsay and conjecture, as well as erroneous, contradictory, unreliable, speculative and conclusory statements." Appellant's only assertion supporting this statement is that Thompson was not a licensed therapist and that the trial court erred by allowing her to testify in lieu of the children. However, numerous witnesses provided testimony consistent with Thompson's testimony that appellant stabbed both Serena and Ricky while the children were home. Additionally, appellant did not object to the evidence offered at trial that he used drugs while caring for the children and had abused Serena in the past. For these reasons, we conclude that appellant's 161.001(E) argument is unpersuasive.
Based on our review of the entire record, we conclude that a factfinder could reasonably form a firm belief or conviction that appellant engaged in conduct that endangered the physical or emotional well-being of S.B. and Y.B., and therefore, we hold that the evidence is legally and factually sufficient to support the trial court's finding. See TEX. FAM.CODE ANN. *886 § 161.001(1)(E); J.F.C., 96 S.W.3d at 266; C.H., 89 S.W.3d at 28.
Because a petitioner need establish only one of the acts or omissions enumerated under subdivision (1) of section 161.001, we need not address whether the evidence is legally and factually sufficient to support the trial court's finding that appellant knowingly placed or knowingly allowed his children to remain in conditions which endangered their physical or emotional well-being. See TEX. FAM.CODE ANN. § 161.001(1)(D); In re A.J.L., 136 S.W.3d 293, 305 (Tex.App.-Fort Worth 2004, no pet.); In re S.F., 32 S.W.3d 318, 320 (Tex. App.-San Antonio 2000, no pet.). Instead, we will next consider whether the trial court's finding that termination of appellant's parental rights was in the children's best interest was factually insufficient. See TEX. FAM.CODE ANN. § 161.001(2).

B. Appellant's Best-Interest Claim
Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include
(1) the desires of the child,
(2) the emotional and physical needs of the child now and in the future,
(3) the emotional and physical danger to the child now and in the future,
(4) the parental abilities of the individuals seeking custody,
(5) the programs available to assist these individuals to promote the best interest of the child,
(6) the plans for the child by these individuals or by the agency seeking custody,
(7) the stability of the home or proposed placement,
(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and
(9) any excuse for the acts or omissions of the parent.
Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976); In re M.N.G., 147 S.W.3d 521, 539 (Tex.App.Fort Worth 2004, pet. denied). These factors are not exhaustive. Some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate. In re C.H., 89 S.W.3d at 27; In re M.N.G., 147 S.W.3d at 539. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. In re C.H., 89 S.W.3d at 27; In re M.N.G., 147 S.W.3d at 539. On the other hand, the presence of scant evidence relevant to each Holley factor will not support such a finding. In re C.H., 89 S.W.3d at 27; In re M.N.G., 147 S.W.3d at 539.
In addition to the above, a parent's inability to provide adequate care for the child, lack of parenting skills, poor judgment, and repeated instances of immoral conduct may also be considered when looking at the child's best interest. In re C.A.J., 122 S.W.3d 888, 893 (Tex. App.-Fort Worth 2003, no pet.). We now address those factors for which relevant evidence was admitted.
1. The Emotional and Physical Danger to the Children Now and in the Future
Officer Hardy, Thompson, and the children all testified that the children were present when appellant stabbed Serena and Ricky. Further, appellant admitted *887 that although S.B. and Y.B. were not in the same room of the stabbing, they were at Serena's house when it occurred. Appellant's violent tendencies clearly pose a physical danger to S.B. and Y.B. now and in the future. See Holley, 544 S.W.2d at 371-72. Additionally, by stabbing both Serena and Ricky while his children were home, appellant placed them in severe emotional danger. See id.
The evidence at trial also showed that appellant used crack cocaine and marijuana, had cared for the children while using drugs, had abused Serena on more than on occasion, knew that Serena was a prostitute and used crack cocaine, and knew that the children lived with Serena when she and appellant separated. Additionally, while Serena and appellant maintained custody of the children, neither S.B. nor Y.B. attended school regularly and the power and water in their home had been turned off at least once. Even without considering appellant's stabbing of Serena and Ricky and its impact on S.B. and Y.B., the evidence supports a finding that appellant was indifferent to his children's physical and emotional safety during much of their young lives. These instances support the trial court's finding that termination is in the best interest of the children. See In re C.H., 89 S.W.3d at 27; In re M.N.G., 147 S.W.3d at 539.
2. The Plans for the Children by the Agency Seeking CustodyThe Stability of the Home or Proposed Placement
John Holden and Denita Bramer, S.B. and Y.B.'s maternal uncle and his wife, have expressed an interest in adopting both children. Appellant asserts that Holden is unfit to maintain custody of the children because he smoked crack cocaine in the past. However, Holden passed two drug tests during CPS's screening process. CPS granted the couple possessory conservatorship of the children after making several visits to their home and conducting a relative home study.
At trial, multiple witnesses testified that S.B. and Y.B. have exhibited "wonderful improvements" since moving in with Holden and Bramer, who provide the children with stability and love. Both children are happy, attend school regularly, and show affection towards Bramer and Holden.
The evidence here shows that S.B. and Y.B.'s lifestyle improved immensely after CPS placed them with Bramer and Holden, supporting the trial court's finding that termination was in the children's best interest. See In re C.H., 89 S.W.3d at 27; In re M.N.G., 147 S.W.3d at 539.
Appellant claims that Thompsonthe children's counselorwas not a licensed therapist familiar with the children's paternal relatives and that the trial court consequently erred by relying on her testimony when making best-interest determinations. Appellant, however, did not object to Thompson's qualifications or testimony about the paternal relatives at trial. Therefore, appellant did not preserve this point for our review. See TEX.R.APP. P. 33.1(a)(1).
3. The Acts or Omissions of the Parent Which May Indicate that the Existing Parent-Children Relationship is Not a Proper One
Evidence of a parent's unstable lifestyle can support a factfinder's conclusion that termination is in the child's best interest. In re D.S., 176 S.W.3d 873, 879 (Tex.App.-Fort Worth 2005, no pet.). A parent's drug use, inability to provide a *888 stable home, and failure to comply with his family service plan support a finding that termination is in the best interest of the child. Id. At the time of trial, appellant was facing a potentially long-term incarceration for murdering Serena and stabbing Ricky. A trial court may consider incarceration as a best-interest factor. See In re J.B.W., 99 S.W.3d 218, 229 (Tex. App.-Fort Worth 2003, pet. denied) (holding that incarceration is one factor courts can consider when determining the best interest of a child in a termination case).
Appellant is also a drug user. Several witnesses during trial testified that appellant used both crack cocaine and marijuana.
The evidence also showed that prior to the termination trial, appellant had not written any letters to S.B. or Y.B., had not completed any tasks on his CPS Plan, and had never attempted to contact CPS about the children.
Based upon our review of the entire record, we conclude that the trial court could have reasonably formed a firm conviction or belief that termination of appellant's rights was in S.B.'s and Y.B.'s best interest. Therefore, we hold that the evidence is factually sufficient to support the trial court's finding that termination is in S.B.'s and Y.B.'s best interest.
Accordingly, we overrule appellant's third point.

VI. Conclusion
Having overruled appellant's second and third points and dismissed his first point, we affirm the trial court's order.
NOTES
[1] TEX. FAM.CODE ANN. § 263.405(i) (Vernon Supp.2006); In re C.R., No. 02-06-00099-CV, 2006 WL 3114468 (Tex.App.-Fort Worth Nov. 2, 2006, no pet. h.) (mem.op.) (Livingston, J., concurring) (analyzing this statute); In re D.A.R., 201 S.W.3d 229, 230 (Tex.App.-Fort Worth 2006, no pet.) (same).
[2] Appellant raised two additional issues in his statement of points. Because he did not argue those issues in his brief, we need not address them. See TEX.R.APP. P. 38.1(e).
[3] See In re A.J.H., No. 205 S.W.3d 79, 80 (Tex.App.-Fort Worth 2006, no pet. h.) (citing HOUSE COMM. ON JUVENILE JUSTICE AND FAMILY ISSUES, BILL ANALYSIS, Tex. H.B. 409, 79th Leg., R.S. (2005) which provides that if a party points out a mistake warranting a new trial, the trial court can immediately order a new trial, accomplishing the legislative policy of decreasing post-judgment delay in termination cases).
[4] Appellant did not challenge the reliability of the statements S.B. made to Thompson.