

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00706-CV

**IN THE INTEREST OF R.M.C.**, a Child

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-PA-00998
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: March 27, 2019

AFFIRMED

This is a parental termination case in which appellants, mother ("Mother") and father ("Father"), separately appeal the trial court's order terminating their parental rights to their child. On appeal, both Mother and Father argue the evidence is legally and factually insufficient to support the trial court's finding that termination was in the best interest of the child. We affirm the trial court's order.

### BACKGROUND

On May 10, 2017, the Texas Department of Family and Protective Services filed a petition to terminate Mother's and Father's parental rights to R.M.C. Emergency removal was sought due to the child testing positive for methamphetamines at birth. Mother tested positive for marijuana and methamphetamines at the hospital.

Trial on the merits was held on September 25, 2018. At the time of trial, R.M.C. was approximately sixteen months old. The Department caseworker testified that the Department prepared a service plan for Mother which was made an order of the court. The caseworker testified that Mother was not in compliance with her service plan and had failed to complete a domestic violence program, substance abuse treatment, individual counseling, and had missed all but two of her drug tests. Father was also ordered to complete a family service plan but was not in compliance. He failed to complete a domestic violence program, substance abuse treatment, individual counseling, and couples counseling. The caseworker had a "significant concern" that both parents were engaging in drug use. They did not consistently test for drugs as required. Both Mother and Father were asked to test seven times and tested twice; each tested positive for drugs on one occasion. The caseworker stated that Father tested positive for meth and amphetamines, and Mother tested positive for meth, amphetamines, and cocaine. Neither parent had tested again since their positive drug tests on May 30, 2018. In the caseworker's opinion, the parents had not addressed their drug issues. The caseworker believed that drug use around a young child such as R.M.C. was a safety concern. The caseworker did not believe the parents were currently capable of providing a stable environment for R.M.C. The caseworker was also concerned about domestic violence in the home based on Father's prior arrest for family violence where Mother was the victim.

The caseworker stated the parents had an appropriate home and Father was employed. They visited their daughter weekly and there were no concerns regarding the appropriateness of the visits; the caseworker had no concerns about the child's safety during the visits. The child was placed with fictive kin, and the placement was open to adopting the child. The Department attempted to reunify the child with Mother. It is unclear from the testimony, but it appears that on at least one occasion, the child was returned to Mother and Father for monitored return; the child

was removed due to the parents' refusal to drug test and not living at the residence they had reported to the Department. The caseworker believed that termination of parental rights was in the child's best interest in order to establish permanency for the child.

Father testified that he completed drug treatment and family violence training and individual counseling. He maintained regular visits with the child and had a great, "unimaginable" bond with his daughter. He stated he missed some drug tests because he works a lot, averaging 70-80 hours a week. Father stated he would never use drugs around his daughter. He has an apartment and has lived there approximately six months.

Father's father also testified at trial. He stated Father is loving towards R.M.C. and always wants to be with her. He testified that Mother was also a good parent who tends to R.M.C.'s every need. He asked the court to allow the parents to maintain their parental rights.

After hearing the testimony and argument of counsel, the trial court terminated Mother's parental rights pursuant to section 161.001(b)(1)(O), (P), and (R). *See* TEX. FAM. CODE ANN. § 161.001(b)(1) (O), (P), (R). The trial court terminated Father's parental rights pursuant to section 161.001(b)(1)(O) and (P). *Id.* § 161.001(b)(1)(O), (P). The trial court found that termination of parental rights was in the best interest of the child. Mother and Father separately appealed to this court.

### STANDARD OF REVIEW AND STATUTORY REQUIREMENTS

To terminate parental rights pursuant to section 161.001 of the Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See id.* §§ 161.001, 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In this case, the trial court found clear and convincing evidence of three predicate grounds to terminate Mother's

parental rights and two predicate grounds to terminate Father's parental rights; the trial court also found termination of both Mother's and Father's parental rights was in the best interest of the child.

We evaluate the legal and factual sufficiency of the evidence to support the trial court's findings under the standard of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002). Under this standard, the trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the witnesses. *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam).

## DISCUSSION

Mother and Father argue the evidence is legally and factually insufficient to support the trial court's finding that termination was in the best interest of R.M.C. In determining the best interest of a child, courts apply the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

Here, the evidence showed that R.M.C. was born with drugs in her system. As such, the Department's primary concern in attempting to reunify the child was that the parents engage in and complete substance abuse treatment. Yet despite the requirement of drug testing, the parents failed to submit to testing on five out of seven occasions. And the last time they tested, they were both positive for drugs. *See In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (noting parent's drug use supports a finding that termination is in best interest of the child). Their failure to retest after May 2018 supports an inference that they were continuing to use drugs.

The evidence further showed both Mother and Father failed to complete most of the services on their family service plans. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (in determining the best interest of the child in termination proceedings, the trial court may properly consider that the parent did not comply with the court-ordered family service plan for reunification with the child); *In re S.B.*, 207 S.W.3d 877, 887-88 (Tex. App.—Fort Worth 2006, no pet.) (considering the failure to comply with a family service plan as support for finding that termination is in child's best interest).

Although we are sympathetic to the parents' efforts to regain custody, we hold the trial court could have, based on the record before us, reasonably formed a firm belief or conviction that termination of Mother's and Father's parental rights is in R.M.C.'s best interest. *See In re J.F.C.*, 96 S.W.3d at 266. We therefore hold there is legally and factually sufficient evidence to support the trial court's best-interest findings.

## CONCLUSION

Based on the foregoing, we affirm the trial court's order terminating Mother's and Father's parental rights.

Rebeca C. Martinez, Justice